**C. O. MORGAN LINCOLN–MERCURY, INC.,**
Appellant,

v.

**VIGILANT INSURANCE COMPANY,**
Appellee.

No. 17601.

Court of Civil Appeals of Texas,
Fort Worth.

March 21, 1975.

Fillmore, Lambert, Farabee & Purtle and Clyde Fillmore, Wichita Falls, for appellant.

Fillmore, Parish, Martin, Kramer & Fillmore and H. Dustin Fillmore, Wichita Falls, for appellee.

OPINION

SPURLOCK, Justice.

This is a suit between C. O. Morgan Lincoln-Mercury, Inc., appellant, and Vigilant Insurance Company, appellee. These parties will be hereinafter referred to as Morgan, the insured, and Vigilant, the insurer.

This suit grows out of the refusal of Vigilant to defend a third party action filed by William C. Yancey and wife, against Morgan.

Morgan and Vigilant each filed motions for summary judgment. The trial court

granted defendant's motion for summary judgment and denied plaintiff's motion for summary judgment.

In this suit Morgan originally sued for recovery of the judgment paid the Yanceys in the original suit, court costs, attorney's fees for defending that case, and attorney's fees for prosecuting this cause. Its claim for payment of the judgment has been abandoned. The claim is now for $3,000.00 attorney's fees expended in defending the Yanceys' suit and the sum of $1,000.00 for prosecuting this suit against Vigilant.

The suit of Yancey v. Morgan resulted in a judgment for plaintiff for damages for conversion and exemplary damages. After a remittitur, the judgment was affirmed. The facts are detailed in the case of C. O. Morgan Lincoln-Mercury, Inc. v. Yancey, 498 S.W.2d 738 (Fort Worth, Tex.Civ.App., 1973, no writ hist.).

The question here involved is whether or not Vigilant had the duty of defending the suit described in the above opinion.

Vigilant did not afford insurance coverage to Morgan for conversion, but did afford coverage for libel, slander, utterance of defamatory and disparaging material, and violation of an individual's right of privacy.

The Yanceys, in their original petition, sued for conversion of their automobile and its contents but did allege that Morgan maliciously and unlawfully, by use of threats and words, and in a threatening manner did curse Yancey and prevent him from recovering his automobile. Morgan did not notify its insurance carrier, in a belief this was a suit for conversion only. Thereafter the deposition of W. C. Yancey was taken and at that time Morgan learned that accusations and charges described herein had been made against him. Vigilant was immediately notified and requested to defend. The Yanceys then filed their first amended original petition which will hereinafter be referred to.

Morgan forwarded a copy of the petition to Vigilant and made another request that they defend. Vigilant refused to defend.

The allegations in Yanceys' petition are to the effect that there was a conversion of the automobile, its reasonable cash market value, the value of personal property contained therein, the cost of transportation, the time spent in searching for a replacement car, the cost of a license, the cost of additional interest, and $50,000.00 as exemplary damages.

The part of the petition in which Morgan relies is as follows:

". . . while Mr. C. O. Morgan was acting in the scope of this employment, as President of the said Lincoln-Mercury Inc., did wilfully, maliciously, unlawfully, speak and utter libelous remarks which were calculated to, and did, defame Plaintiff and his good character, insulted Plaintiff, and such language was calculated to insult a person with a reasonable sensitivity; that the Defendant, C. O. Morgan, by the use of threats did intimidate the Plaintiff to the extent that Plaintiff was fearfull of further insults or abuse even a physical attack *if Plaintiff attempted to remove* his *personal belongings from said automobile* and that by reason thereof Plaintiff was forced and compelled to leave his baby stroller, personal papers, and other personal belongings including the key to his home in the automobile, and that the use of such threats, and the resulting fear to the Plaintiff, the Defendant unlawfully obtained possession and use of Plaintiff's above said 1968 Mercury Cougar automobile, to wit: by violently and in a threatening manner curse the Plaintiff, William C. Yancey, while he was wearing the uniform of the United States Air Force, and telling the Plaintiff that he had 'guts' to even bring said car back into Defendant's place of business which was a intentional insult to the Plaintiff and all of which invaded Plaintiff's right of privacy, and Defendant kept telling Plaintiff that Defendant was going to

keep the said 1968 Mercury Cougar automobile and would not give it back to Plaintiff; Mr. Morgan then told the Service Manager of said corporation that he was taking the above 1968 Mercury Cougar from your Plaintiffs and would keep it and not let the Plaintiffs have the said Cougar back. Such action on the part of Mr. Morgan caused Plaintiff, William C. Yancey, to have fear for his bodily safety while Plaintiff was standing in a public place, the Service Department of C. O. Morgan Lincoln-Mercury Inc. That the said C. O. Morgan *converted* Plaintiffs' above said 1968 Mercury Cougar to C. O. Morgan Lincoln-Mercury Inc. *own use and benefit,* to Plaintiffs damage in the sum of $2100.00."

The petition continues as follows:

## "VI

"That at the time Defendant's agent C. O. Morgan wrongfully converted said automobile, as heretofore alleged, it had a *reasonable market value* of $2100.00.

## "VII

"That at the time Plaintiffs' automobile was wrongfully taken into Defendant's possession on or about January 17, 1972, it *contained personal property* belonging to Plaintiffs consisting of a new set of tires, baby stroller, and business papers all of a value to Plaintiffs of $175.00. . . .

## "IX

"That by reason of the said wilfull and malicious acts committed by Defendant's agent C. O. Morgan to wit: wrongfully and unlawfully taking Plaintiffs' automobile from Plaintiffs' possession by use of force, threats and fear, Defendant is liable for exemplary damages in the sum of $50,000.-00, so as to deter the Defendant from taking property of other honest and trusting customers in the future.

## "X

"WHEREFORE Plaintiffs pray that Defendant be cited to appear and answer herein as required by law, that upon the final hearing hereon Plaintiffs have judgment of and against the Defendant in the sum of $2100.00 for *conversion* of their 1968 Mercury Cougar automobile and for the sum of $3,475.00 *for expenses* that Plaintiffs have been out because of the *wrongful conversion* of their said automobile by Defendant and the further sum of $50,000.00 as punitive damages against the Defendant to punish it for the wrong doing and to deter the Defendant from *wrongfully taking and converting* other peoples property to its own use and for cost of suit, and for such other and further relief both general and special in law and in equity to which Plaintiffs may show themself justly entitled." (Emphases ours.)

The policy of insurance contained the following provisions:

## "1. COVERAGE P–PERSONAL INJURY LIABILITY

"The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as *damages* because of injury (herein called 'personal injury') sustained by any person or organization and arising out of one or more of the following offenses committed in the conduct of the named insured's business:

"Group A—false arrest, detention or imprisonment, or malicious prosecution;

"Group B—the publication or utterance of a libel or slander or of other defamatory or disparaging material, or a publication or utterance in violation of an individual's right of privacy;

"Group C—wrongful entry or eviction, or other invasion of the right of private occupancy;

if such offense is committed during the policy period within the United States of

America, its territories or possessions, or Canada, and the company shall have the right and duty to defend any suit against the insured *seeking damages on account of such personal injury* even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit ·as it deems expedient, but the company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements.

" . . .

"IV.   AMENDED DEFINITION

"When used in reference to this insurance: *'damages' means only those damages which are payable because of personal injury arising out of an offense to which this insurance applies.*

"COMPREHENSIVE AUTOMOBILE LIABILITY INSURANCE COVERAGE PART

" . . .

"1.   COVERAGE C—BODILY INJURY LIABILITY

"COVERAGE D—PROPERTY DAMAGE LIABILITY

" . . .   and the company shall have the right and duty to defend any suit against the insured *seeking damages on account of such bodily injury or property damage,* even if any of the allegations of the suit are groundless, false or fraudulent. · · ·

"SUPPLEMENTARY PAYMENTS

"The company will pay, ·in addition to the applicable limit of liability:

"(a) all expenses incurred by the company, all costs taxed against the insured in any suit defended by the company and all interest on the entire amount of any judgment therein which accrues after entry of the judgment and before the company has paid or tendered or deposited in court that part of the judgment which does not exceed the limit of the company's liability thereon; . . . ." (Emphases ours.)

Vigilant refused to defend on the grounds that it was not notified of the accident and suit in accordance with the policy provisions and in addition thereto that there was no coverage.

In view of our decision the notice question will not be discussed but this opinion will be confined solely to the question of coverage.

The rule of law applicable here is stated in Heyden Newport Chem. Corp. v. Southern Gen. Ins. Co., 387 S.W.2d 22, 24 (Tex. Sup., 1965):

█ "We think that in determining the duty of a liability insurance company to defend a lawsuit the allegations of the complainant should be considered in the light of the policy provisions without reference to the truth or falsity of such allegations and without reference to what the parties know or believe the true facts to be, or without reference to a legal determination thereof." See also Sewer Constructors, Inc. v. Employers Casualty Co., 388 S.W.2d 20 (Houston, Tex.Civ.App., 1965, ref., n.r.e.).

█ We are of the opinion that the Yanceys' petition shows on its face that it is a suit for conversion and damages growing out of that conversion.  It is not a suit for libel, slander or defamation of character.  No damages are alleged or sought by reason of the heated words at the time of the conversion.  The allegations concerning threats and harsh words are simply a recital of the facts leading up to the conversion and were given as a reason that the Yanceys could not recover their automobile.

The uttered words were also pleaded as facts to support the Yanceys' prayer for exemplary damages.

In 1 Tex.Jur.2d 505, Actions, Section 1, it is stated:

" . . . The elements of a cause of action are the invasion of a legal right without justification or excuse, or the commission or threatened commission of a legal wrong, *and the damages resulting therefrom.*" (Emphasis ours.)

It is manifestly clear that Vigilant, under its contract of insurance, had no duty to defend the suit against Morgan because the Yanceys neither alleged nor sought to recover *damages* because of any *injury* covered by such policy of insurance. Maryland Casualty Company v. Knorpp, 370 S.W.2d 898 (Amarillo, Tex.Civ.App., 1963, ref., n.r.e.).

Morgan's points of errors are overruled.

The judgment of the trial court is affirmed.